**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **ELLERY G. PENNINGTON AND** | § | |
| **LAURA M. PENNINGTON, on behalf of** | § | |
| **themselves and all others similarly situated** | § | |
| | § | |
| **v.** | § | **A-10-CA-785 LY** |
| | § | |
| **HSBC BANK USA, NATIONAL** | § | |
| **ASSOCIATION and WELLS FARGO** | § | |
| **BANK, N.A.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
          UNITED STATES DISTRICT JUDGE

Before the Court are: Defendants HSBC Bank USA, N.A.'s and Wells Fargo Bank, N.A.'s Motion to Dismiss (Clerk's Doc. No. 47); Plaintiffs' Response to Defendants' Motion to Dismiss (Clerk's Doc. No. 51); and Defendants' Reply in Support of Their Motion to Dismiss (Clerk's Doc. No. 53). The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation.

Plaintiffs are home owners who took out home equity loans and then defaulted on those loans. After the default, the borrowers and their lenders entered into arrangements called Trial Period Plans ("TPPs") through which the borrowers would pay reduced payments, the lenders agreed they would not foreclose, and the lenders agreed they would consider loan modifications for these borrowers. Ultimately the borrowers were denied the loan modifications. They now sue their lenders and loan servicers complaining that the TPPs violated the Texas Constitution, that the lenders breached both express and implied contracts with them, violated the DTPA, made negligent misrepresentations, and are estopped by promissory estoppel from foreclosing.

# I. FACTUAL BACKGROUND[1]

Plaintiffs purport to bring this case as a class action, although at this early stage of the case it has not been certified as such. The suit is filed against Wells Fargo Bank, N.A., its division Wells Fargo Home Mortgage, and HSBC Bank USA (collectively "Defendants") on behalf of Texas resident home equity loan borrowers who were offered loan modifications by Defendants after March 3, 2007. The Plaintiffs are Ellery and Laura Pennington and Traci Smith (collectively "Plaintiffs"). Ellery and Laura Pennington defaulted on their home equity loan for lack of payment and failed to cure the default. Traci Smith alleges she was not in default at the time she sought a loan modification to reduce the payment on her home equity loan. All Plaintiffs attempted to re-negotiate their loans.

In late 2008, Wells Fargo signed a contract with the United States Treasury agreeing to participate in the federal Home Affordable Modification Program ("HAMP"), a program enacted pursuant to the Troubled Asset Relief Program ("TARP"), 12 U.S.C. § 5211, in return for receipt of certain governmental bailout funds. This agreement required Defendants to comply with HAMP program requirements and to perform loan modification and other foreclosure prevention services described in the program guidelines. These requirements included: identifying loans subject to modification under HAMP; collecting information from homeowners to determine eligibility under HAMP; instituting a modified loan with a reduced payment amount that is effective for a three-month trial period; and providing a permanently modified loan for homeowners who comply with the trial period requirements. Complaint at ¶ 19.

---

[1]The facts set out here are taken from Plaintiffs' Fourth Amended Class Action Complaint and Application for Injunctive Relief, and the Court takes these allegations as true in reviewing the motion to dismiss.

As HAMP participants, Defendants entered into Trial Period Plans with Plaintiffs. These TPPs allowed Plaintiffs to make payments that were less than those required by the original loans and required Plaintiffs to provide Defendants with certain information. In return Defendants agreed not to foreclose on Plaintiffs' homes during the TPP and to consider Plaintiffs for permanent loan modifications. Specifically, Plaintiffs were required to send the following documents to Defendants: a signed Trial Period Plan, a signed Hardship Affidavit, a signed and dated IRS Form 4506-T, documentation to verify the income of each borrower, and pre-determined trial period payments for a three-month period. Complaint, Exhibits 2 and 5. It is uncontested that Plaintiffs met all the requirements set forth above. Plaintiffs assert that they made payments and took all other actions required of them by the TPPs, but their requests for loan modifications were ultimately denied.

Plaintiffs Ellery G. and Laura M. Pennington spent over 18 months in the loan modification process with Defendants until their requested loan modification was ultimately denied and Defendants gave notice of their intent to foreclose on the Pennington's home. Smith quit making payments on her home equity loan in mid-2009, received a letter in February 2011 enclosing "Step Two" of the Home Affordable Modification Agreement and setting out loan terms. In May 2011, she received a call from Wells Fargo stating she would not be given a permanent loan modification, and was threatened with foreclosure on her home.

Plaintiffs allege that Defendants required borrowers to get behind on their payments before the would even consider a borrower for a TPP. Plaintiffs allege that Defendants offered home equity loan borrowers loan modifications under HAMP that Defendants knew or should have known[2]

_____

[2]Plaintiffs allege that the Texas Joint Regulatory Agencies issued an explicit advisory to this effect in April of 2009.

violated Article XVI Section 50(a)(6)(L) of the Texas Constitution.[3]  Plaintiffs contend that this provision of the Texas Constitution mandates that interest arrearages cannot be rolled up into a home equity loan modification's payments because a modification to a home equity loan in Texas cannot increase the principal.  Thus, a home equity loan with interest arrears would not be a proper subject for modification unless: 1) the borrower caught up on past due payments; or 2) the lender waived accrued interest as of the date of the modification.  Plaintiffs allege that Defendants induced or required borrowers to incur interest arrearages in order to qualify them for loan modifications under HAMP, but without disclosing how this would make a permanent loan modification all but impossible.  Additionally, Plaintiffs allege that when Defendants failed to grant a permanent loan modification after the three-month trial period, Defendants required or advised Plaintiffs to continue making trial period payments.  Complaint at ¶ 29.

Plaintiffs bring this class action on behalf of themselves and all others similarly situated, asserting violations of the Texas Constitution Article XVI Section 50(a)(6)(L), the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.41-17.63 ("DTPA"), as well as common-law claims of negligent misrepresentation, promissory estoppel, and breach of contract.  Plaintiffs seek damages and equitable relief.  Plaintiffs request a payment by Defendants of $1,000.00 per loan to

---

[3]This provision states:

The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for . . . an extension of credit that . . . is scheduled to be repaid: (i) in substantially equal successive periodic installments, not more often than every 14 days and not less often than monthly, beginning no later than two months from the date the extension of credit is made, each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment; or (ii) if the extension of credit is a home equity line of credit, in periodic payments described under Subsection (t)(8) of this section. . . .

all class members, and request refinancing of their loans or another remedy that otherwise complies with the Texas Constitution. Plaintiffs request monetary damages in the form of the return of payments made by borrowers under HAMP trial period modifications, and interest and charges incurred by or assessed against class members during the pendency or processing of a HAMP or other loan modification. Plaintiffs also request that the Court temporarily and permanently enjoin foreclosures on class members' homes securing the subject home equity loans, and costs and expenses.

## II. MOTION TO DISMISS

Defendants move to dismiss based upon Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief. Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

## A.     Texas Constitution Article XVI Section 50(a)(6)(L)

Plaintiffs allege that "modifications to home equity loans by Wells Fargo to borrowers in Texas that included accrued interest (arrearages), whether 'temporary' or 'permanent,' violated the Texas Constitution insofar as they included interest arrearages or other non-principal charges or fees." Complaint at ¶ 62. Plaintiffs allege that any modification of a home equity loan that includes interest that has not been paid by the borrower violates Section 50(a)(6)(L) of the Texas Constitution, which requires that an extension of credit be "scheduled to be repaid: (i) in substantially equal successive periodic installments . . . . each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment." TEX. CONST., ART. XVI, § 50(a)(6)(L)(i).

Defendants argue that the TPPs did not violate the Texas Constitution because the TPPs were not, by their express terms, modifications of Plaintiffs' home equity loans; rather they were forbearance arrangements. And, Defendants argue, section 50(a)(6)(L) of the Texas Constitution prohibits foreclosure of loans where the payment structure violates that provision, but says nothing about a loan servicer accepting partial payments.

The Texas constitutional provision at issue prohibits the "forced sale" of a "homestead" for the "payment of a debt," unless the debt is one of those listed in that provision. TEX. CONST. ART. XVI, § 50(a). Plaintiffs do not claim that their original loans violated this provision; rather, they assert that a modification of the type contemplated by the TPP *would have* violated this provision, because it would have been an extension of credit that was scheduled to be paid in installments which would not have exceeded the amount of accrued interest as of the date of the payment. But whether such a modification would have violated this provision is irrelevant if no modification ever took place. In other words, for Plaintiffs' claim under the Texas Constitution to prevail, they must show that their loans were in fact modified.

Plaintiffs' own pleading, however demonstrates that their loans were never modified. As Defendants point out, Plaintiffs' Fourth Amended Complaint states that "Wells Fargo did not grant permanent modifications to borrowers following the three-payment trial period." Complaint at ¶ 35. Plaintiffs respond by claiming that the TPP Agreement itself constituted a loan modification. Plaintiffs attach copies of the TPP agreements to their complaint. *See* Complaint Exhibits 2 and 5. Plaintiffs rely upon language contained in the third paragraph, stating:

> I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D above, the lender will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my loan documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. The Modification will provide that, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan. Upon execution of a Modification Agreement by the Lender and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan.

Complaint, Exhibit 2 at ¶ 3.

Defendants argue that the plain language of the TPP and Step Two document expressly indicate that they are not modifications of Plaintiffs' home equity loans, but rather are forebearance arrangements. Defendants point to ¶ 2.G of the TPP, which states:

> I understand that the Plan is not a modification of the Loan Documents and that the loan documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement and (iii) the Modification Effective Date has passed. . . .

*Id.* Similarly, the Step Two document states that "the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii)

the Modification Effective Date . . . has occurred." Complaint, Exhibit 5 at § 2(B). It is undisputed that neither the Pennington TPP nor the Smith Step Two document were signed by the Lender. Thus, the Plaintiffs' own pleadings demonstrate that the parties did not enter into any modification of their loan agreements.

Plaintiffs assert that the language of the TPP is self-contradictory on this point. However, both sections of the TPP cited above contemplate receipt by a borrower of a loan modification agreement fully executed by the Lender before any loan modification could occur. Thus, even when a borrower otherwise fulfilled the requirements of the forbearance agreement, there remained the possibility that the Lender might choose not to sign the loan modification agreement. As already noted, the TPPs, by their plain language, were not contracts guaranteeing that Plaintiffs' loans would be modified. Further, the TPPs make it clear that the original loan documents remained in effect during the period of the TPPs. Complaint, Exhibit 5 at ¶ 2.E ("When the lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents . . ."). Because the complaint demonstrates that no loan modification occurred, as a matter of law the complaint fails to state claim for a violation of § 50 of Article XVI the Texas Constitution.

Nor does the fact that the Defendants accepted partial payments during the TPP trial mean that they violated the Texas Constitution . Although the partial payments constituted less than the accrued interest and paid off no principal, these were plainly temporary payments to stave off foreclosure, and were not themselves an extension of credit contemplated by Section 50(a)(6)(L). Section 50(a)(6)(L) addresses a loan payment schedule at the inception of a loan. The scheduled loan payments were not changed by the TPP, which provides that Wells Fargo will "hold the

payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full." Complaint, Exhibit 2 at ¶ 2.D.

For all of these reasons, the undersigned recommends that the Court grant the motion to dismiss the Plaintiffs' claim under the Texas Constitution.

**B**.      **Breach of Express Contract**

In this claim, Plaintiffs contend that in the TPP the Defendants contracted to provide a loan modification, and Defendants breached that contract.   Plaintiffs   allege that "Defendants were obligated [under the TPP] to give permanent loan modifications to borrowers who satisfied the various contractual conditions precedent."  Complaint at ¶ 85.  Plaintiffs claim that they complied with their obligations under the TPP "by submitting all required documentation, answering all questions truthfully, and by making their payments . . . ."  *Id.* at ¶ 21.  Defendants respond that they had no obligation to modify the Plaintiffs' loans unless and until they determined that the Plaintiffs had met the TPP requirements and sent the borrower a permanent Loan Modification Agreement executed by the borrower and the lender.

Judge Xavier Rodriguez of the San Antonio division of this Court recently faced this very issue.  As he noted,

> [t]here is no Fifth Circuit precedent, and sparse precedent nationwide, on diversity-based breach of contract claims based upon HAMP TPPs.  Of that precedent which exists, almost every district court has affirmed 12(b)(6) dismissal of such breach claims on the basis that the borrower's failure to receive an executed Home Affordable Modification Agreement prevented the borrower's compliance with all TPP obligations.

*Rackley v. JPMorgan Chase Bank, Nat. Ass'n*, 2011 WL 2971357 (W.D. Tex. 2011). Numerous

other courts have reached the same conclusion.[4]  Moreover, the few precedents cited by Plaintiffs

in support of this argument do not hold that the TPP included a promise to modify a loan.  Rather,

they hold that the TPP obligated the lender to *consider* modifying the loan and to provide a decision

to the borrower  after that consideration.  *See Bosque v. Wells Fargo Bank*, N.A., 2011 U.S. Dist.

LEXIS 124603, at *2–3 (D .Mass. Jan. 26, 2011); *Durmic v. JPMorgan Chase Bank, N.A.*, No.

10–CV–10380–RGS, 2010 WL 4825632 (D. Mass. Nov. 24, 2011).

The plain language of the TPP defeats the Plaintiffs' breach of contract claim.  Paragraph 2.F

of the TPP states that:

> If prior to the Modification Effective Date, (i) the lender does not provide me with
> a fully executed copy of this Plan and the Modification Agreement, (ii) I have not
> made the Trial Period payments  required under Section 2 of this Plan, or (iii) the
> Lender determines that my representations in Section 1 are no longer true and correct,
> the Loan Documents will not be modified and the Plan will terminate.

Complaint, Exhibit 2 at ¶ 2.F.  Under this language, even if the Plaintiffs fulfilled all of their

obligations in of the TPP, the TPP and Step Two documents did not guarantee the permanent

modification of Plaintiffs' loans, nor did it obligate the lender to modify the loan.  Both documents

require that certain events occur prior to the modification, making the modification dependent upon

---

[4] *See, e.g. Wigod v. Wells Fargo Bank, N.A.*, No. 10–CV–2348, 2011 U.S. Dist. LEXIS 7314, at *20 (N.D. Ill. Jan.24, 2011);  *Vida v. OneWest Bank, F.S.B.*, No. 10–987–AC, 2010 U.S. Dist. LEXIS 132000, at *15 (D. Or. Dec.13, 2010); *Torres v. Litton Loan Servicing L.P.*, No. 10–cv–01709–OWW–SKO, 2011 U.S. Dist. LEXIS 4616, at *6 (E.D. Cal. Jan 18, 2011); *Grill v. BAC Home Loans Servicing L.P.*, No. 10–CV–03057–FCD/GGH, 2011 U.S. Dist. LEXIS 3771, at *21 (E.D. Cal. Jan 14, 2011); *Prasad v. BAC Home Loans Servicing L.P.*, No. 2:10–CV–2343–FCD/KJN, 2010 U.S. Dist. LEXIS 133938, at *12–13 (E.D. Cal. Dec.7, 2010); *Brown v. Bank of N.Y. Mellon*, No. 1:10–CV–550, 2011 U.S. Dist. LEXIS 6006, at *8 (W.D. Mich. Jan. 21, 2011); *Lonberg v. Freddie Mac*, No. 10–6033–AA, 2011 U.S. Dist. LEXIS 23137, at *16–17 (D. Or. March 3, 2011); *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10–CV–670–HEH, 2011 U.S. Dist. LEXIS 35507, at *14 (E.D. Va. Apr.1, 2011).

the discretion of the Defendants. As a matter of law, Defendants did not breach any obligation in the TPP or Step Two document when they did not modify the Plaintiffs' loans. This claim should be dismissed.

### C.    DTPA Claim

Defendants next claim that Plaintiffs DTPA claim should be dismissed because Plaintiffs do not qualify as "consumers" under the DTPA. In order to establish a claim under the DTPA, a plaintiff must establish, among other things, that he or she is a "consumer." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). A person qualifies as a consumer under the DTPA by meeting two requirements. First, the person must seek or acquire goods or services by lease or purchase. TEX. BUS. & COM.CODE ANN. § 17.45(4). Second, the goods or services sought or acquired must form the basis of the party's complaint. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex. 1987). Whether a person meets these requirements is a question of law. *Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex. App. – Fort Worth 1991, writ denied); *see also Ortiz v. Collins*, 203 S.W.3d 414, 424 (Tex. App. – Houston [14th Dist.] 2006, no pet.). In determining whether a plaintiff is a consumer, the focus is on the plaintiff's relationship to the transaction. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex. 1997).

Generally, a person cannot qualify as a consumer if the underlying transaction is a loan because money is considered neither a good nor a service. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173–74 (Tex. 1980) (holding that the refinance of a car loan did not confer consumer status on the debtor). Additionally, obtaining an extension of credit does not qualify one as a "consumer." *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 567 (Tex. 1984); *Maginn v. Norwest Mortgage Inc.*, 919 S.W.2d 164, 166 (Tex. App. – Austin 1996, no writ). Other courts have applied the *Riverside* holding to modifications of existing loans, holding that loan

modifications are neither goods nor services and cannot form the basis of a claim under the DTPA. *See Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App. – Fort Worth 2007, pet. denied); *see also Broyles v. Chase Home Finance*, No. 3:10–CV2256–G, 2011 WL 1428904, at *4 (N.D. Tex. Apr. 13, 2011) ("subsequent actions related to mortgage accounts—for example, extensions of further credit or modifications of the original loan—do not satisfy the 'good or services' element of the DTPA"); *Cavil v. Trendmaker Homes, Inc.*, No. G–10–304, 2010 WL 5464238, at *4 (S.D. Tex. Dec. 29, 2010) ("a mortgage or modification of a mortgage is not a good or service under the DTPA"; *Ayres v. Aurora Loan* Services, LLC, No. 6:10-CV-593, 2011 WL 2120000, at *3 (E.D. Tex. May 27, 2011) ("refinancing is simply an extension of credit that does not qualify Plaintiff as a consumer"). The Fifth Circuit has also held that pure loan transactions are not covered by the DTPA. *Walker v. FDIC*, 970 F.2d 114, 123-24 (5th Cir. 1992).

In this case, Plaintiffs argue that the TPPs were not mere loan transactions, but instead included financial "services." *See* Response at p. 9-10. The service, Plaintiffs contend, was Defendants' offer of their efforts to determine whether Plaintiffs' loans could be re-configured or worked out as required by the federal government pursuant to the HAMP program. Plaintiffs rely upon *Herndon v. First Nat. Bank of Tulia*, 802 S.W.2d 396, 399 (Tex. App. – Amarillo 1991). In *Herndon*, the borrower claimed that he sought to acquire from the lender a variety of financial services. These services included financial advice on when and where to obtain financing, whether to abstain from borrowing, and how to structure various financial agreements of his business operations. The court held that the bank's financial advice constituted services for purposes of the DTPA.

The purchase of services, in the context of the DTPA, has been defined as the actual transmission of services from one person to another by voluntary act or agreement, founded on

valuable consideration. *Hall v. Bean*, 582 S.W.2d 263, 265 (Tex .Civ. App. — Beaumont 1979, no writ); *see also* TEX. BUS. & COM.CODE ANN. § 17.45(2) (West 2002) (" 'Services' means work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods."). The Third Court of Appeals noted in *First State Bank v. Keilman*, 851 S.W.2d 914, 929 (Tex. App. — Austin 1993, writ denied), that "the key principle in determining consumer status is that the goods or services purchased must be an objective of the transaction, not merely incidental to it." (quoting *FDIC v. Munn*, 804 F.2d 860, 863–64 (5th Cir. 1986)).

*Herndon* is distinguishable from the instant case. Financial advice on when to borrow, whether to borrow, and how to structure financial arrangements of business operations is not typically incidental to the loan itself. The type of financial advice found to be a "service" in *Herndon* is far beyond what is alleged to have taken place here. In this case, the end and aim of Plaintiffs' dealings with Defendants was to obtain a loan modification of an *already existing loan*. Defendants' offer of the TPPs were ancillary services that served no purpose apart from facilitating a loan modification of an existing loan. Therefore, as a matter of law, any services provided by Defendants were incidental to the contemplated loan modification; they were not an objective of the transaction. As such, Plaintiffs do not qualify as "consumers" under section 17.45(4) of the Texas Business and Commerce Code and do not have standing under the DTPA.

### D. Negligent Misrepresentation Claim

Plaintiffs assert that "Defendants represented to borrowers in the course of Defendants' loan servicing and lending business that if borrowers complied with the terms of the TPP Agreements, they would be given permanent loan modifications." Complaint at ¶ 70. Plaintiffs also complain that Defendants failed to communicate "the effect of TPP Agreement payments, which was to further increase interest arrearages." *Id.* at ¶ 73. Defendants argue that Plaintiffs fail to state a negligent

misrepresentation claim because Defendants did not owe Plaintiffs a duty outside of their contractual relationship contained in their notes and deeds of trust and the alleged misrepresentations did not concern any existing facts. *See* Motion to Dismiss at p. 9.

Plaintiffs respond that: the pleadings do not identify who owned the notes and deeds of trust in issue here; an existence of a contract between the parties does not preclude a claim of negligent misrepresentation if Plaintiffs plead an injury distinct from the benefit of the bargain of the contract between the parties; that Defendants and Defendants' representative made various misrepresentations of existing fact; and that Defendants guided Plaintiffs into a loan modification process that could never result in a modified loan. Additionally, Plaintiffs point out, the TPP is the "agreement" in issue, which Defendants allege is not a contract, and as such it cannot negate a negligent misrepresentation claim.

Under Texas law, a claimant alleging negligent misrepresentation must show the following: (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation. *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 734 (N.D. Tex. Feb. 10, 2011). "The misrepresentation at issue must be one of existing fact" rather than a promise of future conduct. *Fankhauser v. Fannie Mae*, No. 4:10–CV–274, 2011 WL 1630193, at *7 (E.D. Tex. Mar. 20, 2011).

There is no question that that Plaintiffs and Defendants had an existing contractual relationship prior to the TPPs. Plaintiffs' Fourth Amended Complaint explicitly states that in 2002 the Penningtons purchased their home with a loan from Well Fargo, and that in 2004, they received

a home equity loan from Wells Fargo that paid off their prior note. Complaint at ¶ 37. Smith also received a loan from Wells Fargo. *Id.* at ¶ 48. Texas courts consistently have prohibited tort claims if the parties' relationship and attendant duties arise from a contract. *See, e.g ., Quintanilla v. K–Bin, Inc.*, 993 F.Supp. 560, 563 (S.D. Tex. 1998); *Sw. Bell Tel. Co. v. Deanne*, 809 S.W.2d 493, 493–95 (Tex. 1991); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 777 (Tex. App. – Corpus Christi 2003, no pet.).

In Texas, the tort of negligent misrepresentation requires an injury independent of a breach of contract. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) (per curiam). To determine whether a cause of action sounds in contract or tort, courts look to the source of the duty allegedly breached, and to the nature of the remedy sought. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998). "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.* (internal quotations omitted). Plaintiffs argue that they may bring a negligent misrepresentation claim because the injury they are alleging is distinct from any injury they would claim for breach of the Note, and that injury has distinct and separate economic losses from a breach of contract claim. Plaintiffs point out that they breached the Note by failing to make payments, and thus the injury under the Note is not to them. Instead, they claim separate injuries pursuant to the TPP—the failure to receive a promised permanent loan modification, being induced into incurring interest arrearages and being threatened with foreclosure.

The Court finds that Plaintiffs cannot bring a negligent misrepresentation claim for the loss of their house because that transaction is dictated by the terms Note, for which the house was the security. Foreclosure under the Note cannot qualify as an independent injury. That claim sounds in the existing contract. Similarly, with regard to Plaintiffs' claim that due to Defendants' negligent

misrepresentations they failed to receive a permanent loan modification, this claim is also about the modification of an existing contract and sounds in contract. Additionally, Plaintiffs cannot recover benefit of the bargain damages for a negligent misrepresentation claim. *D.S.A., Inc. v. Hillsboro Independent School Dist.*, 973 S.W.2d 662, 663-664 (Tex. 1998). Thus Plaintiffs cannot attain their requested remedy of a permanent loan modification through a negligent misrepresentation claim.

However, Plaintiffs' allegations that they have been damaged because they were led on by Defendants through the TPP process and thus incurred interest arrearages is less clear.[5] Defendants assert that Plaintiffs have failed to allege misrepresentations of existing fact sufficient to survive a motion to dismiss. Plaintiffs base their claim on allegations that Defendants repeatedly misled Plaintiffs regarding the status of their loan modification process, the possibility of qualifying for a loan modification, and statements that they qualified for the HAMP program.

These allegations all constitute promises of future conduct rather than misstatements of existing facts, and as such they are not actionable. *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379 (Tex. App. – Houston [1st Dist.] 2007, no pet.) ("To establish a negligent misrepresentation claim, the plaintiff must also prove that the defendant misrepresented an existing fact rather than a promise of future conduct."). *See also Reynolds v. Murphy*, 188 S.W.3d 252, 270 (Tex. App. – Fort

---

[5]Defendants assert that this argument is an impermissible attempt to circumvent the statute of frauds with a tort claim. The Statute of Frauds requires that contracts which cannot be completed within one year be in writing. TEX. BUS. & COM. CODE ANN. § 26.01(b)(6) (Vernon 2002). Where the parties do not fix the time of performance and the agreement itself does not indicate that it cannot be performed within one year, the contract does not violate the Statute of Frauds. *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982) (per curiam). The Statute of Frauds does not bar a claim for fraud or negligent misrepresentation to the extent a party seeks to recover reliance or out-of-pocket damages because such damages are not part of the benefit of the alleged bargain between the parties. *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 557 (Tex. App. –- Dallas 2009, pet. dism'd w.o.j.).

Worth 2006, pet. denied); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). Accordingly, Plaintiffs' negligent misrepresentation claims must be dismissed.

### D.    Promissory Estoppel

Plaintiffs' promissory estoppel claim is based upon the assertion that Defendants "promised to offer loan modifications to borrowers who satisfied all TPP Agreement requirements" and that these actions "induced borrowers to remain in the illusory loan modification process rather than take steps to limit or eliminate interest arrearages."   Complaint at ¶¶ 78, 81. The elements of a promissory-estoppel claim are (1) a promise; (2) foreseeability of reliance by the promisor; (3) actual, substantial, and reasonable reliance by the promisee to its detriment; (4) injustice that can be avoided only by enforcement of the promise. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005).

Defendants argue that any promise alleged by Plaintiffs must be contained in the TPPs because Plaintiffs fail to identify in their pleadings any promise outside the TPPs.  Assuming the promises on which Plaintiffs rely are contained in the TPP, Defendants continue, then Plaintiffs have failed to adequately plead a cause of action for promissory estoppel because the TPPs do not make a promise of a loan modification.  Plaintiffs respond that they are pleading that Defendants promised not that they *would* modify Plaintiffs' loans, but that they *could*.  Plaintiffs plead that in reliance on this promise, they incurred interest arrearages that they otherwise would have mitigated.  Plaintiffs do not point to any promise outside the TPPs.

Texas courts have recognized promissory estoppel as an affirmative claim in certain limited circumstances:

> Where the promisee has failed to bind the promisor to a legally sufficient contract, but where the promisee has acted in reliance upon a promise to his detriment, the

promise is to be allowed to recover no more than reliance damages measured by the detriment sustained.

*Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1985). Promissory estoppel, however, may not be used to create a contract that does not otherwise exist. *Id.* at 96; *see also Rice v. Metro. Life Ins. Co.*, --- S.W.3d ----, No. 02-09-0248-CV, 2010 WL 3433058, at * 10 (Tex. App. – Fort Worth August 31, 2010, no pet. h.) (mem. op.) (noting that breach of contract and promissory estoppel are mutually exclusive claims).

As the Court has found above, the TPP in no way sets forth a promise that a future loan modification would take place. Because there is no guarantee of a loan modification in the TPP, Plaintiffs cannot claim they relied to their detriment on such a promise. This is also true for any promise to Plaintiffs that they *could* qualify for a loan modification—a loan modification, by the plain terms of the TPP, was never a certainty and Plaintiffs relied upon a promise of what *might happen* at their own peril. Plaintiffs have failed to plead a promise and have failed to plead reasonable reliance on any promises set forth by the TPP or any promise outside the TPP. Plaintiffs' promissory estoppel claim should be dismissed.

## F. Quasi-contract Claims

Plaintiffs assert they may bring a claim for breach of implied contract and are entitled to damages pursuant to the theories of quantum meruit and/or unjust enrichment. In their Complaint, Plaintiffs state:

90. Plaintiffs and class members continued to make payments under the TPP Agreements after Defendants failed to grant permanent loan modifications following Plaintiffs' and class members' performance of all conditions precedent.

91. Defendants accepted Plaintiffs' payments but still denied a permanent loan modification.

18

Complaint at ¶¶ 90-91. Plaintiffs' argue that an implied contract arose when Plaintiffs continued to make payments after the trial period under the TPPs ended, and that Defendants implicitly agreed, irrespective of the written agreements, to give Plaintiffs permanent loan modifications if they continued to make trial payments pursuant to the TPPs. Complaint at ¶ 90. Defendants argue that Plaintiffs' claim fails as a matter of law because Plaintiffs cannot recover damages under a theory of quantum meruit or unjust enrichment because Plaintiffs had a pre-existing duty to make loan payments under their original loan documents.

Fundamentally, this claim is based on Plaintiffs' argument that they overpaid Defendants when they kept paying monthly payments after the three-month period of the TPP agreement lapsed. The remedy they seek in this claim is damages in the form of these "overpayments." Defendants assert that Plaintiffs were required to make even larger monthly payments under the terms of their original notes and that Defendants could not possibly be "inequitably" or "unjustly" enriched by money that was owed to them under a contract.

Quantum meruit "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Campbell v. Nw. Nat'l Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex. 1978). Plaintiffs cannot make out a quantum meruit claim for damages because they have failed to plead that they provided any benefit or services to Defendants. Similarly, Plaintiffs cannot make out a claim for damages under an unjust enrichment theory. A plaintiff may recover for unjust enrichment by showing that the defendant obtained a benefit from the plaintiff "by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Generally, a party may recover under quantum meruit or unjust enrichment only if no express contract covering the services or materials furnished exists. *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). As noted multiple times herein, there were existing contracts governing the

parties' relationship. Moreover, Plaintiffs fail to plead that they provided a benefit to Defendants they were not already entitled to—specifically, payments under the mortgage. As just noted, the original notes called for payments *higher* than those made under the TPPs, and thus no unjust enrichment could have occurred here. These quasi-contract claims should therefore be dismissed.

### G. Injunctive Relief

Lastly, Plaintiffs request a preliminary injunction for various forms of injunctive relief including an injunction against Defendants from foreclosing on Plaintiffs' and putative class members' homes. Defendants request that Plaintiffs' claims for injunctive relief be dismissed because Plaintiffs cannot show a substantial likelihood that they will prevail on the merits. In light of this Court's determination that Plaintiffs' claims should be dismissed, the Court finds that Plaintiffs' request for injunctive relief should also be dismissed.

## III. RECOMMENDATION

The undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendants HSBC Bank USA, N.A.'s and Wells Fargo Bank, N.A.'s Motion to Dismiss (Clerk's Doc. No. 47) and **DISMISS WITH PREJUDICE** all of Plaintiffs' claims.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 22nd day of December, 2011.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE